**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 7 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KATHY OWEN,

      Plaintiff - Appellee,

v.

FRANK C. MCKIBBEN,

      Defendant - Appellant.

No. 02-1411
(D.C. No. 01-B-1878)
(D. Colo.)

FRANK C. MCKIBBEN; FRANK C.
MCKIBBEN, P.C.,

      Debtors.

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, McKAY**, and **MURPHY**, Circuit Judges.


      This appeal arises from Appellee Owen's suit filed in state court against

Appellant McKibben seeking damages based on claims of promissory estoppel,

breach of contract, fraud, and breach of fiduciary duties. Before a determination

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of liability, Appellant filed a voluntary petition for bankruptcy in the bankruptcy court. Subsequent to this filing, Appellee filed for a determination of dischargeability. After a bench trial, the bankruptcy court entered an order concluding that Appellant was indebted to Appellee in the amount of $110,897.80 and that this debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).[2] The bankruptcy court also awarded Appellee costs and reasonable attorney fees. Appellant appealed to the United States District Court for the District of Colorado. The district court reversed the award of costs and attorney fees but affirmed the bankruptcy court in all other respects. Appellant appeals to this court.

Appellee was a legal assistant/paralegal at Appellant's law firm for a total of nineteen years. After a dispute regarding healthcare insurance, another law

---

[2]The relevant portions of 11 U.S.C. § 523(a) provide that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . [or] (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6) (1993).

firm contacted Appellee and offered her a paralegal position. Appellee announced her intention to leave Appellant's firm in 1987 after which Appellant offered to renegotiate the terms of Appellee's employment. Appellee agreed to stay at Appellant's firm, and the parties entered into a compensation agreement at this time. The parties' versions of the compensation package differ substantially. Additionally, Appellee alleged that the deal was modified in September 1987 through renegotiation. Appellant denies that this renegotiation ever took place. The debt in question involves non-performance of the compensation package into which the parties entered in 1987 and the subsequent renegotiation.[3]

---

[3]Appellee testified that the compensation package agreed to in April 1987 included:

> 1) an immediate raise to $1800 per month with a review in September 1987 and an additional raise; 2) healthcare insurance; 3) an automatic $100 monthly bonus regardless of billable hours; 4) a guaranteed 10% annual raise for life; 5) six weeks of vacation after ten years from her original date of employment; 6) continued use of an automobile with all expenses paid except gas and oil; and 7) implementation of a pension or retirement plan.

District Court Order at 4; Aplt. App., Vol. I, at 207-17. Appellee also testified that the September renegotiation consisted of "a 'forced savings' plan or 'nest egg' consisting of the amount of untaken raises and bonuses" in lieu of a formal pension plan. District Court Order at 4; Aplt. App., Vol. I-II, at 218-20. In contrast, Appellant testified that the compensation package included a raise to $1800 per month, healthcare insurance coverage by adding an additional amount to her pay to cover the cost of adding Appellee to her husband's insurance, periodic bonuses, the use of an automobile, and vacation time as needed. Aplt. App., Vol. II, at 353-59. Appellant denies the existence of a September 1987

(continued...)

Appellant terminated Appellee's employment in February 1997 for reasons disputed by the parties but irrelevant to this appeal. According to Appellee, during a February 27, 1997, meeting at her home, she asked Appellant for an accounting of the monies he owed her. Appellee testified that Appellant denied there ever was an agreement and stated, "[If y]ou take me to court and sue me[,] I'll file bankruptcy so fast . . . you won't know what hit you." Aplt. App., Vol. II, at 238-39. She also testified that Appellant said, "I never intended to stick to that agreement. I just did that to keep from losing you in the office." Id. at 240.

The main question on appeal is whether the bankruptcy court correctly concluded that Appellant's debt was non-dischargeable. The six issues we are asked to review are the same as those addressed by the district court. "In reviewing a district court's decision[, we apply] the same standards of review which governed the district court." In re Kirkland, 86 F.3d 172, 174 (10th Cir. 1996). We review the bankruptcy court's conclusions of law *de novo* and the underlying factual findings for clear error. Id. The issues are whether: (1) Appellant was prejudiced by the bankruptcy court's failure to institute effective sanctions for Appellee's failure to comply with discovery; (2) the bankruptcy court considered inadmissible evidence and evidence never introduced at trial; (3)

---

[3](...continued)
renegotiation. Id. at 359-60.

the finding of false pretenses is supported by the record; (4) the bankruptcy court erred in ruling that Appellant's conduct constituted a willful and malicious injury to Appellee; (5) the bankruptcy court erred in raising sua sponte the exception to discharge in 11 U.S.C. § 523(a)(4) based on Appellant's ERISA defense; and (6) the bankruptcy court erred in assigning an arbitrary figure of a seven percent increase for yearly raises to calculate damages.

The district court set forth all of the issues, facts, and law in a thoughtful and cogent opinion. We will not duplicate that detailed analysis here. Therefore, after a thorough *de novo* review of the briefs and the record, we agree that the debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

We **AFFIRM** the district court for substantially the same reasons set forth in its August 5, 2002, Order.

Entered for the Court

Monroe G. McKay
Circuit Judge